*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Isaiah M. PEREZ**
Private (E-1), U.S. Marine Corps
*Appellant*

**No. 202500123**

_____

Decided: 8 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
William J. Mossor

Findings announced 5 November 2024 by a general court-martial tried at Marine Corps Recruit Depot Parris Island, South Carolina, consisting of members with enlisted representation. Sentence adjudged 5 November 2024 by a general court-martial consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for one year and seven days, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Major Colin P. Norton, USMC*

For Appellee:
*Lieutenant Stephanie N. Fisher, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Chief Judge DALY delivered the opinion of the Court, in which Senior Judge GROSS and Judge de GROOT joined.

**This opinion does not serve as binding precedent but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

DALY, Chief Judge:

Appellant was convicted, contrary to his pleas, of one specification of viewing child pornography in violation of Article 134, Uniform Code of Military Justice, at a general court-martial with enlisted members.[1]

Appellant raises four assignments of error (AOEs):

   I.  **Did the military judge err in denying the defense challenge for implied bias against a panel member who stated he wanted an explanation from Appellant?**

   II.  **Did the military judge abuse his discretion by finding the digital analyst's search of Appellant's phone did not violate the Fourth Amendment?**

   III.  **Is Appellant's conviction for viewing child pornography factually insufficient?**

   IV.  **Was the admission of photos of Appellant and his girlfriend unfairly prejudicial?[2]**

We grant relief on Appellant's first AOE as set forth in our decretal paragraph. That relief renders the remaining AOEs moot.

## I. BACKGROUND

During group voir dire, Staff Sergeant (SSgt) Oscar[3] answered affirmatively that "a person is responsible for everything that is stored on their

---

[1] 10 U.S.C. § 934.

[2] Appellant raised this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

phone."[4] During individual voir dire, SSgt Oscar told trial defense counsel (TDC) that he would want, "the defense to explain" how something got on Appellant's phone.[5] Trial counsel attempted to rehabilitate SSgt Oscar by asking, "Whatever images you see, right, do you agree that the government still has the burden to prove in this case that the accused is guilty?"[6] Staff Sergeant Oscar answered, "I'm not sure, sir."[7] Trial counsel continued to try to rehabilitate SSgt Oscar by asking even narrower, leading questions to gauge his understanding of the burden of proof, such as whether he understood that Appellant had no obligation to testify, the Defense does not have to put on a case, and the burden is solely on the government to prove Appellant's guilt. Staff Sergeant Oscar responded affirmatively to all of trial counsel's leading questions. With open-ended questions from TDC again, SSgt Oscar admitted that he still wanted an explanation from Appellant and stated that it would be difficult for him to set that desire aside.[8] Trial counsel attempted to unsuccessfully to rehabilitate SSgt Oscar again.

After the parties conducted individual voir dire, the military judge further questioned SSgt Oscar. The military judge began his inquiry with SSgt Oscar by attempting to eliminate the hypotheticals presented by counsel. The military judge reminded SSgt Oscar of his preliminary instructions on the burden of proof and then asked, "If you were left with questions . . . or just . . . weren't sure of the facts completely . . . would you hold it against the defense or would you hold it against the government?" SSgt Oscar responded, "I honestly don't know, sir."[9]

The military judge then, somewhat quizzically stated, "And that's because you . . . haven't been instructed on anything yet, right?" To which SSgt Oscar replied simply, "Yes, sir."[10] When the military judge further explained the importance of why the burden never shifts from the government to prove its case, and the accused maintains the presumption of innocence and is not required to present anything, SSgt Oscar answered the military judge's leading questions affirmatively and acknowledged that the government maintains the bur-

---

[4] R. at 501.

[5] R. at 501–02.

[6] R. at 503.

[7] R. at 503.

[8] R. at 507.

[9] R. at 510.

[10] R. at 510.

den. He continued to answer the military judge's directed questions acknowledging the government's responsibilities. However, with every open-ended question from the military judge, SSgt Oscar responded equivocally.[11]

> MJ: All right. And if you were left with questions about how something go somewhere or just – you weren't sure of the facts completely and you wanted to know and those questions were all not answered for you in this case, would you hold it against the defense or would you hold it against the government for not answering those questions that you might have after hearing all of the evidence?
>
> MBR (SSGT OSCAR): I honestly don't know, sir.[12]

In his ruling denying the challenge for implied bias, the military judge did not address the paradoxical answers given by SSgt Oscar. He stated that he believed that SSgt Oscar could follow his instructions. However, he did not explain what led him to believe that a member of the public, fully appraised of all of the facts, would not harbor doubt as to SSgt Oscar's fairness. Staff Sergeant Oscar was impaneled as a member.

## II. DISCUSSION

**The Military Judge Erred in Denying the Defense Challenge for Cause Against S Oscar.**

Appellant asserts that the military judge erred in denying the Defense challenge for cause for implied bias. Appellant further asserts that because the military judge did not recite or apply the standard for implied bias, or provide any reasoning, justification, or analysis for his denial of the implied bias challenge and perfunctorily referenced the liberal grant mandate, we should review the military judge's decision de novo.[13]

*1. Standard of Review*

We review a military judge's implied bias analysis under a standard of review "that is less deferential than abuse of discretion, but more deferential than de novo review."[14] The Court of Appeals for the Armed Forces (CAAF) has

---

[11] R. at 510.

[12] R. at 510.

[13] Appellant's Brief at 20–23.

[14] *United States v. Peters*, 74 M.J. 31, 33–34 (C.A.A.F. 2015) (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (internal quotations omitted)).

explained this sliding standard of appellate review for implied bias challenges falls somewhere between de novo and abuse of discretion based on the specific facts of the case.[15]

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides: "[a] member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality. R.C.M. 912(f)(1)(N) encompasses "both actual bias and implied bias."[16] R.C.M. 912(f)(3) provides: [t]he burden of establishing that grounds for a challenge exist is upon the party making the challenge. Military judges should be "liberal in granting challenges for cause."[17]

Implied bias is bias attributable in law to the prospective member regardless of actual partiality.[18] The test for implied bias is "whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high."[19] In asking that question, this Court will consider the totality of the circumstances and assume the public is familiar with the unique structure of the military justice system.[20]

A military judge who cites the correct law and explains his implied bias reasoning on the record will receive greater deference (closer to the abuse of discretion standard), while a military judge who fails to do so will receive less deference (closer to the de novo standard).[21] Accordingly, the more reasoning a military judge provides, the more deference he or she will receive.[22] Put differently, although appellate courts do not expect record dissertations from military judges when they rule on implied bias challenges, a mere incantation of the legal test for implied bias without analysis is rarely sufficient to afford the

---

[15] *United States v. Keago*, 84 M.J. 367, 373 (C.A.A.F. 2024).

[16] *See United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998) (citing *United States v. Harris*, 13 M.J. 288, 292 (C.M.A. 1982)).

[17] *Rome*, 47 M.J. at 469 (citing *United States v. Smart*, 21 M.J. 15, 21 (C.M.A. 1985)).

[18] *United States v. Hennis*, 79 M.J. 370, 385 (C.A.A.F. 2020) (quoting *United States v. Wood*, 299 U.S. 123, 133 (1936) (quotation marks omitted)).

[19] *United States v. Woods*, 74 M.J. 238, 243–44 (C.A.A.F. 2015).

[20] *Id.* at 244.

[21] *Keago*, 84 M.J. at 373 (citing *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017)).

[22] *Id.*

military judge abuse of discretion review in close cases.[23] Military judges must err on the side of granting defense challenges for cause.[24]

### 2. Analysis

The standard we will apply in this case is closer to de novo because we find that even though the military judge cited the law when he specifically stated that he considered both actual and implied bias and the liberal grant mandate, his analysis was closer to a mere incantation of the legal test and did not apply the law to the facts.[25] Like the military judge in *Keago*, the military judge here began his ruling on Appellant's challenge by citing the rule and explicitly stating that he had applied the liberal grant mandate when analyzing Appellant's challenge of SSgt Oscar. However, also like in *Keago*, this was the extent of the reasoning presented by the military judge with respect to implied bias. He provided no explanations for his denial of Appellant's implied bias challenge, and as such, our standard of review moves closer to de novo.

Applying a less deferential standard of review, several factors lead us to conclude that SSgt Oscar presented a case of implied bias. Only after direct questioning by all parties did he depart from his initial position, which appeared to place the burden on the Defense to provide an explanation. A reasonable member of the public might wonder how Appellant could receive a fair trial from SSgt Oscar, who appeared to be confused about Appellant's presumption of innocence and right to remain silent. Staff Sergeant Oscar's answers to the leading questions must be treated the same as the CAAF noted in *Keago*: ". . . a potential panel member's predictable answers to leading questions are not enough to rebut the possibility of bias, especially when some of those questions lead to more problematic responses."[26]

In our view, SSgt Oscar's "statements—which suggested critical misunderstandings about Appellant's fundamental constitutional rights—establish that it was at least a close case whether a reasonable member of the public would

---

[23] *See Dockery*, 76 M.J. at 96.

[24] *See Keago*, 84 M.J. at 372 (citing *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007)). The liberal grant mandate recognizes that interests of justice are best served by addressing potential member issues at the outset of judicial proceedings. It is intended to address certain unique elements in the military justice system, including limited peremptory rights and the manner of appointment of court-martial members.

[25] *See Dockery*, 76 M.J. at 96. However, even if we gave the military judge greater deference, we would find that the military judge abused his discretion.

[26] *Keago*, 84 M.J. at 374 (citing *United States v. Nash*, 71 M.J. 83, 89 (C.A.A.F. 2012)).

have significant questions about the fairness of Appellant's panel."[27] Staff Sergeant Oscar's honest struggling with critical concepts, including the burden of proof and the right of Appellant to remain silent, was not addressed by the military judge, and would leave a member of the public with significant questions about the fairness of the panel that convicted Appellant. We conclude that Appellant's challenge of SSgt Oscar presented a case of implied bias. Because military judges are required to apply the liberal grant mandate and excuse members in close cases, the military judge erred by failing to do so.

## III. CONCLUSION

After careful consideration of the record and the briefs of the parties, the findings and sentence are **SET ASIDE**. A rehearing is authorized.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[27] *Id.* at 375 (citing *United States v. Rogers*, 75 M.J. 270, 271 (holding that a member's "uncorrected misunderstanding of a relevant legal issue would cause an objective observer to have substantial doubt about the fairness of [the accused's] court-martial panel."))